UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| PAUL F. MYERS, | : | Bankruptcy No. 03-10698DWS |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| PAUL F. MYERS, | : | Adversary No. 04-0895 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN MEDICAL SUPPLY CO., | : | |
| JAMES LYLE, EASTBURN & GRAY, P.C., | : | |
| JANE E. LEOPOLD-LEVENTHAL, | : | |
| ANDREW J. BLADY, | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion of Southern Medical Supply Co. ("Southern"), James Lyle ("Lyle"), Eastburn & Gray, P.C. ("E & G"), Jane E. Leopold-Leventhal ("Leopold-Levanthal") and Andrew Blady ("Blady") ("Defendants") for Summary Judgment

("Motion") in connection with the Complaint of Paul F. Myers to Enforce the Discharge Injunction.[1] On June 8, 1999 Southern obtained a final judgment in the amount of $739,004.52 against Paul F. Meyers ("Debtor") and his two wholly owned corporations jointly and severally.  The saga of Southern's efforts to collect that judgment have spanned six years and three courts.  Three of the five judges of this bankruptcy district have been presented with bankruptcy cases of persons and entities involved in this drama. Notwithstanding the long and involved account of the Debtor's efforts to resist Southern's collection efforts as presented in the Motion, the issue before me is rather simple. Given Debtor's receipt of a discharge in his Chapter 7 bankruptcy case, did the subsequent actions of Southern and its agents violate the injunction imposed on the collection of discharged debts?  The answer is plainly no.

**BACKGROUND**

The relevant facts are not in dispute.  As noted above, on June 8, 1999 a final judgment in the amount of $739,004.52 (the "Judgment") was entered jointly and severally against Debtor and his wholly owned corporations, Alpha Technology, Inc. ("Alpha Tech") and Micro Design and Development, Inc. ("Micro") by the Superior Court of Lamar County, Georgia. Exhibit A to Motion.[2]  It was transferred to Bucks County, Pennsylvania

---

[1] Also pending before the Court is a Motion in Limine filed by the Defendants in which they seek to preclude certain evidence.  Since I grant the Motion on the record made by Defendants, I need not reach the issues raised by the Motion in Limine.

[2] Unless stated otherwise, exhibits referenced are appended to the Motion. "As is true with other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged." 10A Charles A.Wright, Arthur R.

-2-

in January 2001, and on August 2, 2002, the Superior Court of Pennsylvania denied the judgment debtors' appeal. Southern Medical Supply v. Myers, 804 A.2d 1252 (Pa. Super. 2002), attached as Exhibit B.

During the pendency of the post-judgment proceedings, various steps were taken to obstruct collection of that Judgment. They are documented as findings of the Court in Southern Medical Supply, Inc. v. Margaret Schultz and Alpha Watch, Inc., No. 00-6418-13-2 (Pa. Com. Pl. Aug. 13, 2004) (hereinafter the "State Court" and the "2000 Case"). Exhibit C. Until April 23, 1999 Alpha Tech and Micro were owned by Debtor. On April 16, 1999 Debtor married Margaret Schultz ("Margaret") and formed a new corporation, Alpha Watch, Inc. ("Alpha Watch"), and Margaret became its sole shareholder. On April 23, 2005 Alpha Tech and Alpha Watch, acting though Debtor and Margaret, entered into an agreement for the express purpose of transferring assets from Alpha Tech to Alpha Watch. On October 20, 2000, Southern commenced the 2000 Case against the above-named defendants as well as Debtor, seeking to avoid the asset transfer under the Pennsylvania Uniform Fraudulent Transfer Act. Id.

---

Miller & Mary K. Kane, Federal Practice and Procedure §2722, at 384 (1998). Accord Johnson v. United States Postal Service, 64 F.3d 233, 237 (6th Cir. 1995) (ruling that the "failure to object to evidentiary material submitted in support of a summary judgment motion constitutes a waiver of those objections."); H. Sand & Co., Inc. v. Airtemp Corporation, 934 F.2d 450, 454-55 (2d Cir. 1991) (Rule 56 does not require parties to authenticate documents "where appellee did not challenge the authenticity of the documents in the district court."); Dautremont v. Broadlawns Hospital, 827 F.2d 291, 294-95 (8th Cir. 1987) (affirming summary judgment where appellant failed to object in district court to its consideration of documents not in compliance with Rule 56 and failed to demonstrate that district court's consideration of documents constituted reversible error); Giovacchini v. Perrine (In re Giovacchini), 1995 WL 80102, at *3 n.1 (E.D. Pa. Feb. 27, 1995) (*citing* Federal Practice and Procedure §2722) (holding that unauthenticated medical reports would be considered in ruling on motion for summary judgment since no objection was raised thereto).

-3-

On January 15, 2003 Debtor filed a petition under chapter 7, and any further action against him in the 2000 Case was stayed. On May 27, 2003 Debtor received a discharge of all debts arising prior to the filing of the petition on January 15, 2003, including the Judgment. 11 U.S.C. § 727(b). However, the 2000 Case proceeded to trial as against the remaining two defendants on August 11, 12 and 13, 2004, and the State Court entered a judgment order accompanied by a bench opinion on August 13, 2004 in favor of Southern and against Alpha Watch and Margaret in the amount of $1,198,778.19 and found that the transfer of the assets of Alpha Tech to Alpha Watch was intended to and did hinder and delay its creditors. Exhibits C and D.

On the eve of trial on August 10, 2004, Southern filed a second equity action against Stroll Control, Inc. ("Stroll"), Debtor and Margaret in the State Court, <u>Southern Medical Supply v. Stroll</u>, No. 04-5148-27-5 (the "2004 Case") seeking an injunction to restrain Debtor and Margaret from transferring the assets of Alpha Watch to Stroll, a corporation formed and owned by Debtor. Exhibit G.[3] On August 13, 2004, the Court entered a preliminary injunction restraining the Defendants and their agents from transferring, liening or in any way diminishing the value of the property transferred from Alpha Watch to Stroll and appointed a receiver for Stroll. Exhibit E. That Order was expressly supplemented by a further written ruling which enjoined and prohibited Debtor, individually and as owner of Stroll, from "owning, operating, buying, investing in, working in or being involved with in any capacity any individual or entity that designs, manufactures, sells, markets, distributes,

---

[3] The 2004 Case was assigned to and heard by the same judge, Honorable Robert J. Mellon, as presided over the 2000 Case.

-4-

repairs or installs patient monitoring systems and access control systems, including but not limited to, wander control systems," until further order of court. Exhibit G. Notably wander control systems were the business of Alpha Tech which was carried on by Alpha Watch and Stroll when the Alpha Tech assets were conveyed to them. Exhibit C at 5.

Thereafter, the record reflects a pattern of obstruction and contumacious conduct on Debtor's part, including violations of the August 13 order and the filing of bad faith bankruptcy cases for Margaret and Stroll. Exhibits L and M-1. Under the rubric of the "best defense is a good offense," Debtor filed an expedited motion to reopen his Chapter 7 bankruptcy case contending that Southern, its attorneys and Lyle, the court-appointed trustee of Stroll had violated the discharge injunction by reason of the foregoing actions. After an expedited hearing, the motion to reopen was granted on September 8, 2004, and the Complaint accompanied by a motion for temporary restraining order and preliminary injunction were filed on September 13, 2004. After denial of the request for a temporary restraining order, the Debtor abandoned the motion for preliminary injunction, and the parties negotiated a pretrial schedule, including the date for filing dispositive motions. Pursuant to that agreement, the Motion was filed.

**DISCUSSION**

**I.**

A motion for summary judgment is governed by Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 56 applicable in this proceeding pursuant to Federal Rule of Bankruptcy

7056. Summary judgment, "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party moving for summary judgment must overcome the initial burden of demonstrating the absence of a material question of fact. Celotex v. Catrett, 477 U.S. 317, 325 (1986). The substantive law will determine which facts are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Id. at 255. A court must find that the motion alleges facts which, if proven at trial, would require a directed verdict. 6 J. Moore, Moore's Federal Practice, ¶ 56.26 (2d ed. 1988). If so, the respondent "must set forth specific facts showing there is a genuine issue for trial," and may not "rest upon the mere allegations or denials of the pleading." Fed.R.CivP. 56(e). If the non-movant's evidence "is merely colorable, or is not significantly probative, summary judgement may be granted. Anderson, 477 U.S. at 250. The absence of a genuine issue for trial is evident where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Mashusita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In this case, the non-moving party does not contend that there are disputed facts but rather disagrees as to the legal consequences of the agreed facts. As such, this matter is particularly appropriate for summary judgment as a matter of law.

**II.**

Section 524(a)(2) provides that a discharge in a case under title 11 operates as an injunction against the commencement or continuation of any action to recover or collect any debt discharged under § 727 of the Bankruptcy Code. 11 U.S.C. § 524(a)(2). The Judgment entered in the State Court against Debtor and in favor of Southern is a debt that has been discharged, and Southern is enjoined from taking any action to collect it. Debtor contends that the relief Southern has demanded in the 2004 Case seeks to collect the Judgment as against Debtor. Moreover, he contends that the actions taken against <u>Margaret and Alpha Watch</u> in the 2000 Case because she is his wife and Alpha Watch is a family controlled corporation also violate the injunction arising from <u>his</u> discharge.

**A.**

It is undisputed that the Judgment was entered against Debtor, Alpha Tech and Micro. Discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability for the debt. <u>Hall v. National Gypsum</u>, 105 F.3d 225, 229 (5th Cir. 1997). Section 524(e) makes clear that the debt still exists and may be collected from any person or entity still liable thereon. Moreover in a situation involving personal liability of non-debtor third parties, the discharge injunction does not prohibit the commencement or continuation of a suit against the debtor for the purpose of facilitating the proceeding against the third party. <u>E.g.,</u> <u>In re Jet Florida Systems, Inc.</u>, 883 F.2d 970 (11th Cir. 1989) (debtor's discharge notwithstanding, plaintiff may bring action against debtor to establish liability if liability is prerequisite to recovery from insurer who may also be liable). As the Judgment remains viable as to the latter two defendants, actions to enforce it are clearly permissible.

In furtherance of the collection of the Judgment against the non-debtor defendants, Southern commenced the 2000 Case against Debtor, Margaret and Alpha Watch for fraudulently transferring the assets of Alpha Tech and Micro to Alpha Watch. When Debtor filed for bankruptcy relief and the stay was imposed, the action proceeded against the other defendants. This suit came to trial in August 2004. However, as a result of discovery taken in the 2000 Case, Southern learned that Debtor had formed yet another corporation (Stroll) and moved the assets again. Accordingly, Southern filed a new action against Debtor (out of bankruptcy and no longer immune from lawsuit), Margaret and Stroll seeking equitable and legal relief.[4] Affidavit of Jane E. Leopold-Leventhal, Esq. at ¶¶ 9-11, Exhibit N.

The gravamen of the 2004 Case is that Debtor and Margaret incorporated Stroll in July 2004 and transferred the assets of Alpha Watch to that entity without the payment of reasonable consideration. As such, Southern alleged that Stroll was formed with the actual intent to hinder, delay and defraud Southern in its attempt to execute on the Judgment and

---

[4] Specifically the prayer for relief included the following:

1. Request for injunction from further transferring the corporate assets Alpha Watch transferred to Stroll;

2. Request that Debtor be declared a trustee for the benefit of Southern for an amount not less than Alpha Watch's indebtedness to Southern (i.e., $739,004.32);

3. Request to void transfers of Alpha Watch assets to Stroll;

4. Request for the appointment of a receiver for Stroll;

5. Request that Stroll provide an accounting of all property received from Alpha Watch, Debtor and Margaret;

6. A request for judgment against Debtor for $739,004.32.

Exhibit A to Debtor's Memorandum of Law in Opposition to Motion.

any potential judgment entered in the 2004 Case.  Southern filed these actions to follow the assets of the corporations that were liable to it (Alpha Tech and Micro) and sued the transferees (Alpha Watch and Stroll) as well as Debtor who has been found to be in control of the assets and responsible for the transfers.

Viewing the 2004 Complaint in its entirety, I find that the remedies sought against Debtor personally were to avenge his conduct in obstructing Southern's efforts to collect a non-discharged debt against third parties by causing assets of the judgment debtors to be transferred to other entities and therefore out of reach.  As Southern has been unable to collect the Judgment and attributes that harm to the post-discharge actions of the Debtor, the 2004 Complaint seeks to hold him personally liable for that new post-discharge injury.  The Complaint, when read in context, makes clear that Southern is not seeking to collect the previously discharged debt but rather is seeking a new judgment against all the named defendants for their actions in fraudulently conveying assets to defeat the collection of the non-discharged Judgment.  It is also apparent that the equitable remedies that were sought in the 2004 Complaint addressed the conduct pled and were intended to preserve and restrain Debtor from further fraudulent transfers of the assets that have been twice transferred from Southern's judgment debtors and not to collect the discharged debt.[5]  The Orders entered by Judge Mellon, Exhibits E, G and H, were tailored to the conduct pled and proven.

---

[5] Because I find that Southern's actions, equitable and legal, were not in furtherance of collecting a discharged debt, I need not address the parties disparate view of the holding in In re Ben Franklin Hotel Associates, 186 F.3d 301 (3d Cir. 1999).

Painting a broad brush, Debtor advances the erroneous view that actions taken in furtherance of collecting the non-discharged Judgment violate the discharge injunction entered in Debtor's case. Debtor contends that his inclusion as a defendant in the 2004 Case and Southern's refusal to dismiss him on his statement that his discharge precluded such suit are discharge violations. Notably absent in Debtor's case is any context for his position. Rather he merely points to the prayer for relief in the 2004 Case Complaint which he appears to believe stand on their own as evidence of the violations he charges.[6] As noted above, I respectfully disagree.

As additional ground to support his Complaint, the Debtor alleges that his personal bank account was frozen by Univest Bank for a short period following the entry on August 16, 2004 of the supplemental order. Exhibit G. It goes on to state that "[t]he Defendants deny responsibility for those actions, although employees of Univest Bank, where the accounts were held, have not accepted responsibility for the action, either." Complaint ¶ 18. Notably the Complaint does not aver that the defendants, i.e., Southern, Lyle, Leopold-Leventhal and Blady, caused the accounts to be frozen. While there may be a question as to who was responsible for the freeze, the Complaint conspicuously does not

---

[6] Looking solely at the prayer for relief as he would have this court do, the Debtor could appear to have a basis for complaint with respect to the last remedy pled, i.e., a request for judgment against Debtor for $739,004.32. This is the amount of the discharged debt. However, viewed in its context with reference to the full 2004 Complaint, which Debtor fails to acknowledge, a contrary conclusion emerges as discussed above.

plead that it was the Defendants.[7] The Debtor's Opposition to the Motion does not address this point. Absent an allegation that Defendants were responsible, there can be no liability found on this issue either.

**B.**

The Debtor's further contention that his discharge has been violated by the actions taken against Margaret and Alpha Watch in the 2000 Case is so without merit that I will dispose of it quickly.[8] Indeed I note that the Debtor's Memorandum of Law, while replete with hyperbole and theatrics, is devoid of any authority for the proposition that actions against a person other than the debtor can violate the debtor's discharge which by definition

---

[7] It clearly was not the attorneys Leopold-Levanthol and Blady since they have in a sworn affidavit disclaimed responsibility. Leopold-Levanthol Affidavit ¶ 33. Since they acted on behalf of E&G, their denial of responsibility would exonerate the law firm as well. Lyle also submitted an affidavit stating that he had not been engaged in any action to collect the discharged debt, and the actions that have been taken on behalf of Southern have been taken on his behalf by the foregoing counsel solely based on Debtor's conduct subsequent to his discharge. Lyle Affidavit ¶¶ 10, 11, Exhibit K. Notably the only explanation for the freeze is contained in findings made by Bankruptcy Judge Bruce Fox in Margaret's short-lived bankruptcy case. In reciting the factual background elicited at a hearing on a motion to dismiss the Chapter 13 case, he states that on August 16, 2004 Lyle was appointed receiver for Alpha Watch and Stroll. He informed Univest Bank of his receivership status, and "upon receiving this information the bank apparently decided to freeze the accounts of Alpha Watch and Mrs. Meyers. Exhibit J-1 at 7. While the opinion does not refer to Debtor's account (presumably because he was not involved in the litigation), it seems likely that the freeze on his account can be similarly explained.

[8] It does not appear from a reading of the Complaint that this second ground was originally contemplated. While the Complaint alleges that the actions against Debtor in the 2004 case violated the discharge injunction, the only reference to the 2000 case is that the Order dated August 13, 2004 rendered in the 2000 Case, Exhibit A to Complaint, Exhibit D to Motion, is void as to him. If one reads the Order, however, it is crystal clear that the Order is not directed at Debtor. If the Complaint was implicitly advocating this unsupportable view that Margaret and Alpha Watch, being controlled by him, are him for the purposes of the discharge injunction, it does not so state.

merely relieves the <u>debtor</u> from *in personam* liability.[9]  As noted above, section 524(e) plainly states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  It could not be clearer.  Actions against the debtor are enjoined.  Actions against third parties are not.  Since the law does not allow (with some exceptions not relevant here) a third party release on a debt that is shared with a discharged debtor, it follows that collection of the debt against that third party will not violate the debtor's discharge.  To hold otherwise would indirectly offer a remedy that is directly foreclosed by the statute.  Whether the actions against Margaret and Alpha Watch, because of their closeness to Debtor and his ability to control them, had the affect of limiting the fresh start he has enjoyed is besides the point.  They are separate and apart from him, and only he received a discharge.  The Debtor's affinity for using corporations and persons to accomplish his personal objectives is a double-edged sword.  Having placed assets in related entities that he controls in order to insulate them from his personal liability, they are clearly

---

[9] Notably Debtor never contended in 2000 when Southern ceased action against him because of his bankruptcy filing that the action should be enjoined against Margaret and Alpha Watch who were not in bankruptcy.  Rather the remaining defendants contested Southern's actions through appeals and otherwise and there was no hint of any connection to the Debtor's discharge.  This is apparent in reading Judge Mellon's Opinion dated December 9, 2004, consolidating the 2000 and 2004 Cases for the purpose of setting forth the complete factual background of all the State Court litigation and explaining his rulings for the purpose of appeals that were lodged to his Orders of August 13, 2004. Exhibit M-1.  While the defendants raised a host of exceptions to the rulings, not one touched upon the propriety of the actions taken against Debtor given his bankruptcy discharge.  They argued that it was improper to enter an injunction against Debtor, as sole shareholder and president of Stroll, prohibiting him from further transfers of property conveyed from Alpha Watch to Stroll because he was not present at the hearing, not because the debt was discharged. <u>Id.</u> at 44-45. Having soundly been rejected in the State Court on every conceivable state law ground, Debtor returns to this forum with his new bankruptcy theory to continue his efforts to obstruct Southern from collecting the non-discharged Judgment it received six years ago.

susceptible to judgment on their own liability without regard to any protection he might enjoy.

    For the foregoing reasons, the Motion will be granted and judgment shall be entered in favor of Defendants. An Order so stating accompanies this Memorandum Opinion.

                                                  DIANE WEISS SIGMUND
                                                 Chief U.S. Bankruptcy Judge

Dated: May 17, 2005

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| PAUL F. MYERS, | : | Bankruptcy No. 03-10698DWS |
| | : | |
| Debtor. | : | |
| | : | |
| PAUL F. MYERS, | : | Adversary No. 04-0895 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN MEDICAL SUPPLY CO., | : | |
| JAMES LYLE, EASTBURN & GRAY, P.C., | : | |
| JANE E. LEOPOLD-LEVENTHAL, | : | |
| ANDREW J. BLADY, | : | |
| | : | |
| Defendants. | : | |

# ORDER

**AND NOW**, this 17th day of May 2005, upon consideration of (1) the Motion of Southern Medical Supply Co., James Lyle, Eastburn & Gray, P.C., Jane E. Leopold-Leventhal and Andrew Blady ("Defendants") for Summary Judgment (the "Summary Judgment Motion"), and (2) the Defendants' Motion *in Limine*;

**And** after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

<u>Adversary No. 04-0895</u>

It is hereby **ORDERED** that:

1. The Summary Judgment Motion is **GRANTED**. Judgment is entered in favor of Defendants and against the Debtor;

2. The Motion in Limine is **DENIED** as Moot.

_____<br>
DIANE WEISS SIGMUND<br>
Chief U.S. Bankruptcy Judge

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA 19073

Francis J. Sullivan, Esquire
SULLIVAN & SULLIVAN
403 Executive Drive
Langhorne, PA 19047

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

Michael Kaliner, Esquire
312 Oxford Valley Road
Fairless Hills, PA 19030